IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


SETH TAYLOR,                              )
                                          )
            Plaintiff,                    )
                                          )          NO. 3:17-cv-01359
            v.                            )          Chief Judge Crenshaw/Brown
                                          )
D.C.S.O., ET AL.,                         )
                                          )
            Defendant.                    )


TO:     The Honorable Waverly D. Crenshaw, Jr.,
        Chief United States District Judge

## REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge recommends the Defendant's pending

Motion for Summary Judgment (DE 34) be granted and this case be dismissed with prejudice and

any appeal not be certified as taken in good faith pursuant to 28 U.S.C 1915(a)(3).

### I. Background

The Plaintiff filed a complaint against the Davidson County Sheriff's Office, Sheriff Hall

and Warden Harold Taylor on October 11, 2017. (DE 1). He also filed an application to proceed

*in forma pauperis* (DE 2). On initial review (DE 4), the application to proceed IFP was approved.

Claims against the Davidson County Sheriff's Office were dismissed, and the matter was referred

to me for case management and for disposition of any dispositive motions.

After some difficulty in obtaining service on Sheriff Hall (DE 9), service was subsequently

obtained on all Defendants.

Subsequently, Sheriff Hall filed a Motion to Dismiss claims against him in an individual capacity (DE 15) on June 22, 2018. On the same date, the undersigned entered an Order pointing out that the Plaintiff was required to respond to the motion and that failure to do so could result in the motion being granted. The Plaintiff filed an Opposition to the Motion on July 5, 2018. Defendant Taylor was finally served on June 29, 2018 and filed a Motion to Dismiss (DE 21) on July 20, 2018. The Defendant did not respond to this Motion to Dismiss and on September 4, 2018 (DE 23) the undersigned entered an Order pointing the failure to respond out to the Plaintiff and once again noting that failure to respond to a motion could result in it being granted. Subsequently, the Plaintiff did respond (DE 26) on September 21, 2018. A Report and Recommendation was submitted (DE 29) on January 15, 2019, recommending all claims against Sheriff Hall and Warden Taylor in their individual capacities be granted and the Metropolitan Government of Davidson County (Metro) be substituted as the sole defendant in this case since the claims against Sheriff Hall and Warden Taylor in their official capacities were in essence claims against Metro. That Report and Recommendation was subsequently adopted (DE 33) and the Clerk was directed to add Metro as the remaining defendant in this case.

It does not appear that a formal scheduling order was entered following the adoption of the Report and Recommendation. The next activity in the case was a Motion for Summary Judgment filed by Metro on September 19, 2019 (DE 34). This motion was supported by memorandum of law and a statement of undisputed material facts DE 35 and 36.

As of the date of this Report and Recommendation, the Plaintiff has not responded in any way to the motion.

/ / /
/ / /
/ / /
/ / /

## II. Legal Discussion

Even though the Plaintiff has failed to file a response to the Motion, the undersigned has nevertheless reviewed the record to determine if the Motion is supported in law and fact.

## III. Standard of Review

The Court has applied the well-known standards set forth in *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary Judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to the judgment as a matter of law. The moving party bears the initial responsibility for informing the Court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. Once the movement has met the burden, responsibility shifts to the non-moving party to make a sufficient showing of the existence of an essential element to the party's case.

## IV. Review of the Record

Under Local Rule 56.01 the Defendant has filed a proper motion accompanied by Legal Memorandum and a Statement of Undisputed Material Facts (DE 34-36). The Plaintiff is required under the Rule to respond to the Motion within 21 days. In this case, over 50 days have passed and the Plaintiff has not responded to the Motion or to the Statement of Undisputed Material Facts. Under Local Rule 56.01(f) failure to respond means the asserted facts shall be deemed undisputed for the purpose of Summary Judgment.

## V. Summary of Plaintiff's Medical Treatment

The Affidavit of Melinda Stephens, Registered Nurse, employed as the Health Services Administrator for Correct Care Solutions (CCS) at the time of complaint, provided copies of the Plaintiff's medical records and a summary thereof (DE 34-1). The medical records do not show

any complaint about skin problems for medical treatments received on July 23, 2016 or August 3, 2016. His first complaints concerning his skin were recorded on November 6, 2016, and he was seen on November 9, 2016, where it was noted he had itching pustules and erythema on his right and left arms. Hydrocortisone cream for 30 days was ordered by Dr. Finney. On November 16, 2016, he complained the cream prescribed for the itching was not working and that he needed something stronger. He was seen two days later on November 18, 2016, but the records indicate that he did not wish to show Licensed Practical Nurse Shorey his rash. She noted that she only saw an area on his thigh that was the size of a nickel and he was scheduled for a doctor's appointment. On November 28, 2016, it was noted that he had had a rash for three weeks and that it had puss filled lesions, which burst when scratching, leaving a scab. A physical examination noted he had a scabbed lesion on his hand and small macular lesion on his hands with dryness. Prednisone was ordered for the period of time from November 29 to December 3, 2016. It appears the Plaintiff refused his medication on November 29 and December 1, 2016 but received treatment otherwise on November 30, and December 2, 4, 8-11, 2016. When the Plaintiff complained about the lack of progress on December 4, 2016, he was seen on December 6, 2016 and Nurse Practitioner Miller renewed the Prednisone treatment for December 7-11, 2016. The records indicate Plaintiff refused Prednisone on December 7, 2016 because it interfered with his sleep. However, on December 8 he complained that his itching continued, and he thought the problem might be scabies or bed bugs. Plaintiff was informed that the doctor had seen him on December 3, 2016, but had not found scabies or bed bugs on his skin. His order for Prednisone was continued. On December 12, 2016, he again completed a health care request claiming the Prednisone provided only temporary relief and requested medication be re-administered or changed. On December 13, 2016, no redness, broken areas, or welts were noted, even though the Plaintiff claimed that it was

present but could not be seen.  As a result of a healthcare request on December 14, 20116, Plaintiff was seen on December 16, 2016 and after some discussion agreed to be treated with Hydrocortisone cream, and Hydrocortisone 1% cream was ordered for itching and papules as Plaintiff was diagnosed with dermatitis.  On December 17 and 18, 2016, the Plaintiff indicated he did not want the Hydrocortisone.  Hydrocortisone was apparently not available from December 21, 2016.  Subsequently, on December 28, 2016, he complained about being charged for Cortisone cream that had not been received.    On December 28, 2016, the Plaintiff continued to complain about the pruritic rash that he had had for the proceeding three months.  He complained that he had been itching and the creams were making the lesions worse.  A physical exam showed erythematous papules, macules, excoriations on his hands, arms, finger webs, legs and feet.  He was placed on Scabies Protocol, and Ivermectin 18 mg was ordered for December 28, 2016 and then was to be repeated in two weeks. On December 29, 2016, it was noted he was on scabies protocol and that the cream had been provided. Pursuant to the Scabies protocol on December 28, 2016, he was also ordered to receive new linens and be put in contact isolation for 24 hours.  The next day the Plaintiff indicated he felt fine and had no complaints at that time and was cleared to return to his previous pod.  On January 1, 2017, the Plaintiff was ordered to shower, receive new underwear, socks, jumpsuit, linens, and return to the general population.

Unfortunately, on January 2, 2017, the Plaintiff again complained the medication needed to be re-administered as he contended the dosage was not strong enough.  On January 3, 2017, he was advised he would receive another dose of Ivermectin on January 11, 2017, and it was common for itching to increase with an Ivermectin dose.  The Plaintiff received additional Ivermectin medication on January 11 and 12, 2017.  On January 22, 2017 the Plaintiff noted a few red areas and stated his problems were 95 percent gone.  It was noted he had three or four small red bumps

and his problems were seen as resolving.  On January 22, 2017, the Plaintiff received another Ivermectin treatment.  On January 26, 2017, the Plaintiff refused Mobic.

The records reflect the Plaintiff did not complain of Scabies like symptoms on his next acute care visit on February 3, 2017 or thereafter.

## VI. Legal Analysis

To state a claim for relief under Section 1983, the Plaintiff must establish that:

1)      He was deprived of a right secured by the constitution or the laws of the United States, and

2)      The alleged deprivation was committed under color of state law *Am. Mfrs. Mut. Ins Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  Whether reviewed under either the Eighth or the Fourteenth Amendment to the Constitution prison officials are prohibited from unnecessarily and wantonly inflicting pain on prisoners by acting with deliberate indifference to their serious medical needs. *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 895 (6th Cir. 2004).

The Plaintiff at the Summary Judgment stage may not simply rely on his complaint, he must provide some evidence to support the claims.  He must present evidence the Defendants subjectively perceived facts from which to infer a substantial risk to the Plaintiff and they did draw that inference and then disregarded the risks.

Negligent treatment does not meet this standard, and negligent treatment as such does not constitute a violation of Section 1983. *Estelle v. Gamble*, 429 U.S. 104 (1976), *Mitchell v. Hininger*, 553 Fed. Appx. 602, 606-07 (6th Cir. 2013).   Unnecessary suffering is sufficient for Eighth Amendment purposes.  *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991). For the purpose of this review, the Magistrate Judge has considered Scabies as a serious medical condition.

Officials may be shown to be deliberately indifferent to serious needs without evidence of conscious intent to inflict pain. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988). "However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). Further, "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'" *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). However, "in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860 n.5.

Unfortunately for the Plaintiff, the medical records do not show a deliberate indifference by any of the jail medical staff. The Plaintiff was seen for the most part within two (2) days of his complaints, and he received consistent medical treatment throughout, even though at times the Plaintiff refused treatment and disagreed with some of the medications.

In view of the failure of the Plaintiff to establish a deliberate indifference to his medical needs, the Magistrate Judge has not addressed other arguments made by the Defendants in their brief. It is noted, however, the company providing the actual medical treatment at the jail and its employees was not sued by the Plaintiff. The Plaintiff has failed to provide evidence that any deliberate indifference by Wellpath, LLC (formerly Correct Care Solutions, LLC) (CCS)) was a result of a policy by the sole defendant in this case, Metro.

## VII. Recommendation

For the reasons stated above the Magistrate Judge recommends this case be dismissed with prejudice and any appeal not be certified as taken in good faith.

Any party has fourteen (14) days from receipt of the Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.

Respectfully submitted,


/s/ Joe B. Brown_____
Joe B. Brown
United States Magistrate Judge